**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| STEVEN P.,[1] | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Civil No. 3:25-cv-76-SLS |
| | ) |
| FRANK BISIGNANO, [2] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

**<u>MEMORANDUM OPINION</u>**

In this action, Plaintiff Steven P. seeks review of the Commissioner of the Social Security

Administration's ("SSA") decision to deny his Title II application for disability insurance benefits.

This matter comes before the Court on cross-motions for summary judgment, which have been

fully briefed, making this matter ripe for review.  (ECF Nos. 13, 14, 15, 16.)[3]  The Court exercises

jurisdiction with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) (ECF Nos. 2, 6, 17)

and pursuant to 42 U.S.C. § 405(g).

Plaintiff moves the Court to reverse the Commissioner's decision denying him social

security benefits and to find him disabled, or in the alternative, remand this matter for further

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for the former Acting Commissioner as Defendant in this action. 42 U.S.C. § 405(g).  No further action need be taken.

[3] Plaintiff filed a Motion for Summary Judgment, asking that the Court enter judgment against the Commissioner and in his favor.  (ECF No. 13.)  In the alternative, Plaintiff filed a Motion for Remand, asking that the Court find that the Commissioner committed legal error and remand the matter for further proceedings.  (ECF No. 15.)

administrative proceedings consistent with the Court's decision.  (ECF No. 14, at 1.)  As the basis for such relief, Plaintiff argues that: (1) the Administrative Law Judge's ("ALJ's") residual functional capacity ("RFC") determination is not supported by substantial evidence because Plaintiff's testimony and the medical evidence support additional restrictions, including limiting Plaintiff to sedentary work (ECF No. 14, at 1, 20-21); and (2) the ALJ improperly evaluated medical opinion evidence (ECF No. 14, at 1, 16-19).

In response, the Commissioner contends that the ALJ applied correct legal standards in evaluating the record evidence, including Plaintiff's testimony, the medical evidence, and medical opinions, and that substantial evidence supports the ALJ's RFC determination.  (ECF No. 16, at 2.)  The Commissioner moves the Court to grant his motion for summary judgment and affirm the ALJ's decision.  (ECF No. 16, at 26.)

For the reasons set forth below, the Court finds that the ALJ's consideration of Plaintiff's subjective complaints, the record evidence, and the medical opinion evidence comports with applicable legal standards and that substantial evidence supports the ALJ's RFC determination. Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF Nos. 13, 15), GRANT the Commissioner's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 16), and AFFIRM the final decision of the Commissioner.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on October 21, 2021, alleging disability beginning on April 20, 2021.  (Administrative Record ("R.") at 22, 71, 79-80.)[4]  In his

---

[4] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. Civ. R. 5 and 7(C).  In accordance with these rules, the Court will exclude personal identifiers from this

application, Plaintiff alleged that he suffered from a low back impairment, arthritis, deteriorating discs, a left shoulder tear, hypertension, diabetes type 2, intellectual disability, high cholesterol, and gastroesophageal reflux disease.  (R. at 71.)  The SSA denied Plaintiff's claims initially on April 14, 2022, and again upon reconsideration on January 23, 2023.  (R. at 22, 96-100, 102-05.) Plaintiff requested a hearing before an ALJ, and one was held on January 5, 2024.  (R. at 22, 39-70, 106-07.)

On February 22, 2024, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act ("the Act").  (R. at 22-34.)  On December 20, 2024, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1-6.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing

---

Memorandum Opinion.  The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

3

the ALJ's five-step sequential evaluation).  At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements.  *Id.* § 404.1520(a)(4)(ii).  At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations.  *Id.* § 404.1520(a)(4)(iii).  Between steps three and four, the ALJ determines the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments.  *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC.  *Id.* § 404.1520(a)(4)(iv).  The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work.  *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  If such past work can be performed, then benefits will not be awarded, and the analysis ends.  *See* 20 C.F.R. § 404.1520(f). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy.  *See id.* § 404.1520(a)(4)(v).  The Commissioner usually offers this evidence through the testimony of a vocational expert.  *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, the Court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'"  *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could

accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

## III.   THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process. (R. at 24-34); *see* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 20, 2021 (the alleged onset date). (R. at 24.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, spinal stenosis, spondylosis,

osteoarthritis, left shoulder osteoarthritis and rotator cuff tendonitis, diabetes, acute congestive heart failure, cirrhosis, anemia, and obesity. (R. at 24.) At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25-26.)

The ALJ then determined Plaintiff's RFC. (R. at 26-32.) Based on the record, the ALJ found that Plaintiff retained the ability to perform light work as defined by 20 C.F.R. § 404.1567(b) with the following limitations:

> [Plaintiff] can sit and stand 4 hours total in a workday; never climb ladders/ropes/scaffolds; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; frequently balance; never reach overhead with the left upper extremity and occasionally reach in front and laterally with the left upper extremity; occasionally push/pull with the left upper extremity; frequently handle, finger, and feel with the left upper extremity; and avoid concentrated exposure to heat, humidity, and pulmonary irritants, such as fumes, odors, dusts, and gases, and avoid concentrated exposure to hazards such as moving mechanical parts and unprotected heights.

(R. at 26-27.)

In arriving at the RFC, the ALJ first summarized Plaintiff's subjective complaints. (R. at 27.) Plaintiff testified that foot pain and numbness made it difficult for him to walk, knee pain limited his ability to bend, stoop, squat, and lift, and daily leg swelling required him to elevate his legs for thirty minutes towards the end of the day. (R. at 27.) He reported shortness of breath with walking, which prevented him from walking a flight of steps without stopping, and fatigue, which caused him to lie down sporadically throughout the day for thirty to sixty minutes at a time. (R. at 27.) He stated he could stand and sit for about thirty minutes and walk to his mailbox with breaks. (R. at 27.) Plaintiff complained of left shoulder pain and reduced mobility, stating that reaching overhead was painful but reaching in front was "not that much of a problem." (R. at 27.) He reported difficulty holding things in his left hand without dropping them and estimated that he could lift five pounds using his left arm and ten pounds using his right. (R. at 27.) Plaintiff stated

6

he needed assistance bathing, but that he could dress himself, fold laundry, shop for food (although sometimes with the assistance of a riding chair), and drive a few times a week up to ten miles. (R. at 27.)

The ALJ then summarized Plaintiff's medical records pertaining to his impairments. (R. at 28-30.) Regarding Plaintiff's back impairments, Plaintiff saw an orthopedist for back issues prior to the onset date. (R. at 29 (citing Ex. 5F/4-10 [R. at 566-72]).) An MRI from September 2020 showed evidence of mild disc desiccation, lower lumbar facet arthropathy, and bilateral sclerotic pars defects at L5 without listhesis. (R. at 28 (citing Ex. 4F/89 [R. at 558]).) In February 2021, Plaintiff exhibited lumbar tenderness with decreased range of motion, but normal strength and sensation, negative straight leg raise, and symmetric reflexes. (R. at 29 (citing Ex. 5F/4-10 [R. at 566-72]).) An epidural steroid injection was recommended but the record does not indicate Plaintiff received any injection. (R. at 29 (citing Ex. 5F/4-10 [R. at 566-72]).) At an October 15, 2022 consultative examination, Plaintiff exhibited severe lumbar and moderate mid-back paraspinal muscle tenderness with muscle spasms, lumbar and sacroiliac joint trigger points, and positive straight leg raise at 45 degrees. (R. at 29 (citing Ex. 7F [R. at 627]).) During a March 2023 visit, Plaintiff reported ongoing back pain. (R. at 29.)

As for Plaintiff's left shoulder impairment, he reported left shoulder pain with difficulty raising his arm above his head in April 2021. (R. at 28.) A left shoulder examination showed mild tenderness with limited range of motion, but intact strength and sensation and no weakness or paresthesia. (R. at 28 (citing Ex. 4F/22-23 [R. at 491-92]).) That same month, an X-ray of Plaintiff's left shoulder showed mild degenerative narrowing. (R. at 28 (citing Ex. 5F/32 [R. at 594]).) In May 2021, Plaintiff reported improvement in his shoulder pain with physical therapy

and showed a full active range of motion on examination, although he began to struggle with pain and weakness at 160 degrees abduction. (R. at 28 (citing Ex. 4F/18-20 [R. at 487-89]).)

In July 2021, Plaintiff reported worsening left shoulder pain and stated he could not lift more than eight pounds. (R. at 28.) On examination, Plaintiff had 4/5 strength on left rotator cuff testing and a full range of motion. (R. at 28 (citing Ex. 4F/16-17 [R. at 485-86]).) In September 2021, Plaintiff had 4+/5 rotator cuff abduction strength, normal sensation, and a decreased range of motion of forward flexion to 140 degrees, abduction to 90 degrees, and external rotation to 45 degrees. (R. at 28 (citing Ex. 1F/12-13 [R. at 309-10]).) An October 2021 MRI showed a posterior superior labrum tear and moderate osteoarthritis of the glenohumeral joint, but no rotator cuff tear. (R. at 28 (citing Ex. 1F/10 [R. at 307]).) On examination, Plaintiff had normal sensation, 4+/5 abduction strength, flexion to 120 degrees and external rotation to 35 degrees, and received an injection in the left subacromial bursa. (R. at 28 (citing Ex. 1F/9-11 [R. at 306-08]).)

In March 2022, Plaintiff reported being unable to lift more than five pounds due to a labral tear, but no examination was performed. (R. at 28 (citing Ex. 6F/14-15 [R. at 614-15]).) During an October 2022 consultative examination, Plaintiff had a decreased range of motion at the left shoulder and 4/5 left shoulder abduction, but otherwise 5/5 upper extremity strength. (R. at 29 (citing Ex. 7F [R. at 625-27]).) During a March 2023 visit, Plaintiff reported ongoing shoulder pain. (R. at 29.)

Regarding Plaintiff's diabetes, in May 2021, Plaintiff's hemoglobin A1c had decreased from 11.5 percent to 9.9 percent on medication, and Plaintiff reported checking his blood sugar every "once in a while." (R. at 28.) In September 2021, Plaintiff's diabetes remained stable but uncontrolled, with an A1c level of 10.1. (R. at 28 (citing Ex. 4F/8-9 [R. at 477-78]).) Plaintiff's A1c level improved to 8.9 percent by December 2021. (R. at 28 (citing Ex. 4F/4-5 [R. at 474-

8

75]).)  In March 2023, Plaintiff reported numbness in both feet, but a diabetic foot test revealed "normal monofilament testing and normal vibratory and position sensation."  (R. at 29 (citing Ex. 12F/28-30 [R. at 701-03]).)  In June 2023, Plaintiff's hemoglobin A1c was controlled at 7.2 percent.  (R. at 29 (citing Ex. 12F/12-14 [R. at 685-87]).)

As for other impairments, in May 2023, Plaintiff reported experiencing swelling in both legs for a couple of days associated with shortness of breath and trouble walking.  (R. at 29 (citing Ex. 12F/19-20 [R. at 692-93]).)  He had 1+ pitting edema in the legs and was told to elevate his legs.  (R. at 29 (citing Ex. 12F/19-20 [R. at 692-93]).)  A few days later, Plaintiff was admitted to the hospital for three nights for anemia, acute congestive heart failure, and cirrhosis.  (R. at 29.)  Plaintiff received two units of packed red blood cells, and an echocardiogram showed a preserved ejection fraction of 60 percent.  (R. at 29 (citing Ex. 13F [R. at 722-26, 770-71]).)  At the time of discharge, Plaintiff's leg edema had largely resolved.  (R. at 29.)  A month later, in June 2023, a cardiopulmonary exam was normal, and Plaintiff reported that the leg swelling had resolved, although he felt tired.  (R. at 29 (citing Ex. 12F/12-14 [R. at 685-87]).)

After summarizing the medical record, the ALJ found Plaintiff's complaints and testimony regarding the intensity, persistence, and limiting effects of his symptoms inconsistent with those medical records.  (R. at 29.)  The ALJ then identified several inconsistencies.  For example, Plaintiff claimed that he could lift only five pounds with his left arm and ten with his right, but he elsewhere reported being able to carry a pack of forty water bottles at his waist as of June 2021.  (R. at 29 (citing Ex. 4F/79 [R. at 548]).)  Medical examinations also showed that Plaintiff had mildly decreased abduction strength of 4/5 of the left shoulder but otherwise had normal upper extremity strength and normal grip strength of his upper extremities.  (R. at 29 (citing Ex. 1F/9-13 [R. at 306-10]; Ex. 7F [R. at 622-30]).)  Regarding his complaints of back pain, the ALJ noted the

lack of treatment during the period at issue.  (R. at 29-30.)  Plaintiff sought orthopedic treatment for back pain prior to the onset date and on occasion complained of back pain thereafter but did not seek treatment for the same and at times denied back pain.  (R. at 29-30 (citing Ex. 1F/9, 12 [R. at 306, 309]; Ex. 5F/4-10 [R. at 566-72]; Ex. 7F [R. at 622-30]; Ex. 12F/28-30 [R. at 701-03]).)  Plaintiff testified to having issues with dropping items, but the ALJ found that the medical record did not contain such reports and examination findings revealed normal grip strength and no issues with touching fingers to thumb or making a fist.  (R. at 30.)  Finally, the ALJ considered Plaintiff's testimony regarding walking/standing limitations and the need to elevate his legs alongside the medical record, which reflected a one-time complaint of foot numbness followed by normal findings on testing, short-term leg swelling in May 2023 with reported resolution by June 2023, and isolated reports of shortness of breath at the time of his acute congestive heart failure.  (R. at 30 (citing Ex. 12F/12-14, 19, 28-30 [R. at 685-87, 692, 701-03]).)

> For these reasons, the ALJ concluded:

> [Plaintiff's] left shoulder impairment, with mild strength deficit and limited range of motion as well as his complaints of back pain, support limiting his lifting and carrying to the light exertional level.  Further limitations to no overhead reaching and only occasional reaching in front/laterally and pushing/pulling accommodate for his range of motion limitations, and is consistent with his testimony that he is not able to reach overhead, but he does not have much of a problem reaching in front. . . . The undersigned limits [Plaintiff] to only frequent handling, fingering, and feeling. [Plaintiff's] back pain does support limiting him to only four hours of standing and sitting, along with postural limitations, including no ladders/ropes/scaffolds and only occasional ramps/stairs, stooping, kneeling, crouching, and crawling, as well as limitations with environmental tolerances.

(R. at 30.)

The ALJ also considered the medical opinions and prior administrative medical findings. (R. at 30-32.) The ALJ first considered the prior administrative medical findings of the Disability Determination Services ("DDS") consultants.  (R. at 30-31.)  On initial review, the DDS consultant

found that Plaintiff could perform light work with no climbing ladders, ropes, and scaffolds, occasional climbing of ramps and stairs, occasional stooping, kneeling, crouching, and crawling, and occasional overhead reaching on the left.  (R. at 30-31.)  On reconsideration, the same limitations were found with the additional limitation of no reaching overhead but occasional reaching in front and laterally with the left upper extremity.  (R. at 31.)  The ALJ found these opinions persuasive, although he found the more recent reconsideration determination more persuasive given the examination findings regarding Plaintiff's left shoulder.  (R. at 31.)  The ALJ further limited Plaintiff to four hours of standing and sitting and added additional pushing/pulling and environmental limitations to account for Plaintiff's complaints of pain and subsequent records documenting acute congestive heart failure and cirrhosis.  (R. at 31.)

The ALJ then considered the medical opinion of Marcia Love, PAC, which she provided following an October 15, 2022 consultative examination.  (R. at 29, 31.)  Ms. Love opined that Plaintiff could:

> frequently lift and carry up to 10 pounds on the right, occasionally lift and carry 5 pounds on the left and 20 pounds on the right, sit about 4 hours total in a workday, stand and walk 2 hours total in a workday, never reach and occasionally grasp with the left upper extremity, and never bend, stoop, kneel, or squat.

(R. at 31.)  The ALJ found Ms. Love's opinion unpersuasive because the limitations she recommended were not supported by her examination or consistent with other medical records. (R. at 31.)  Specifically, the ALJ emphasized that the records showed that Plaintiff had only mildly limited upper extremity strength at 4/5 left abduction and otherwise had normal upper extremity strength, full grip strength, and could make a fist and touch each finger to thumb without difficulty. (R. at 31.) Records further documented normal lower extremity strength, reflexes, sensation, and gait, and normal range of motion in all joints except for the left shoulder.  (R. at 31.)  According to the ALJ, these findings did not support the lifting limitations and standing/walking limitations

11

opined by Ms. Love.  (R. at 31.)  Instead, they supported a four-hour sitting/standing limitation with some postural limitations and left side manipulative limitations.  (R. at 31.)

The ALJ also considered the medical opinion of Everett Ford, M.D.  (R. at 31.)  In June 2023, Dr. Ford completed cirrhosis and cardiac questionnaires regarding Plaintiff.  (R. at 31.)  For the cirrhosis questionnaire, Dr. Ford opined that Plaintiff could sit "at least 6 hours total in a workday, stand 2 hours at a time, . . . stand/walk about 2 hours total in a workday," lift ten pounds frequently and fifty pounds occasionally, and should elevate his legs for two hours during the workday after sitting for more than two hours.  (R. at 31.)  For the cardiac questionnaire, Dr. Ford gave the same limitations for sitting, standing, lifting, and carrying, but also directed that Plaintiff should "elevate legs at hip height 80 to 90 percent of a workday; occasionally crouch/squat and climb stairs, and never climb ladders; avoid all cigarette smoke; avoid concentrated exposure to extreme heat, high humidity, fumes, odors, gases, and chemicals; [and] be off-task 10 percent of a workday. . . ."  (R. at 31.)  For both questionnaires, Dr. Ford noted that limitations would be minimal if Plaintiff followed an exercise regimen and diet restrictions.  (R. at 31-32.)

The ALJ found Dr. Ford's opinion unpersuasive.  (R. at 32.)  He emphasized that Dr. Ford only saw Plaintiff during a three-day hospital stay when Plaintiff sought treatment "for acute congestive heart failure caused by newly diagnosed cirrhosis and anemia" and is not listed elsewhere as Plaintiff's treating provider.  (R. at 32.)  The ALJ found no evidence that the conditions Plaintiff sought treatment for during his hospital stay would limit his ability to stand and walk or require leg elevation.  (R. at 32.)  Instead, as Dr. Ford noted, Plaintiff would experience minimal limitations from those conditions provided that he followed the medical regimen and treatment recommendations.  (R. at 32.)

12

The ALJ also considered a May 2021 lifting restriction of ten pounds and a July 2021 one-month left upper extremity lifting restriction of eight pounds contained in treatment records from Plaintiff's primary care provider, Jeff Domingus, D.O.  (R. at 32.)  The ALJ found these limitations unpersuasive because of their "short-term" nature.  (R. at 32.)  The ALJ did not evaluate other evidence that he deemed "neither valuable nor persuasive as defined in 20 CFR 404.1520c and 416.920c."  (R. at 32.)

At step four, the ALJ found that Plaintiff could not perform his past relevant work considering his RFC.  (R. at 32.)  At step five, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy considering his age, education, work experience, and RFC, including that of information clerk, furniture rental clerk, and usher.  (R. at 33-34.)  Therefore, the ALJ found Plaintiff not disabled from April 20, 2021, (the alleged onset date) through February 22, 2024 (the date of the decision).  (R. at 34.)

## IV.   ANALYSIS

Plaintiff raises two challenges to the ALJ's decision.  The Court addresses each argument below and finds no reversible error.

### A. The ALJ Properly Considered Plaintiff's Subjective Complaints and Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff argues that the ALJ erred in evaluating his subjective complaints and the medical record and therefore arrived at an improper RFC determination.  (*See* ECF No. 14, at 1, 20-21.)  Specifically, Plaintiff argues that the ALJ "discount[ed] [Plaintiff]'s testimony about the severity, persistence, and frequency of his symptoms from orthopedic conditions, heart failure, diabetes, and cirrhosis" when determining Plaintiff's RFC and failed to include additional restrictions, including limiting Plaintiff to sedentary work. (ECF No. 14, at 1.)  Contrary to Plaintiff's

argument, the ALJ applied correct legal standards in evaluating Plaintiff's subjective complaints and the medical record, and the ALJ's RFC determination finds substantial support in the evidence.

The regulations provide a two-step process for evaluating Plaintiff's subjective complaints. 20 C.F.R. § 404.1529; *see also* Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029 (Mar. 16, 2016). At the first step, "the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029). At the second step, "after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* The ALJ must consider all available evidence in this determination, including objective medical evidence, "an individual's statements about the intensity, persistence, and limiting effects of the symptoms," and medical opinions and statements from others. *See id.* The claimant does not need to produce objective evidence to satisfy this second prong. *Id.*

Here, the ALJ followed the two-step process in considering Plaintiff's subjective complaints. The ALJ acknowledged Plaintiff's testimony that foot pain and numbness and shortness of breath made it difficult for him to walk and that leg swelling required him to elevate his legs at the end of the day. (R. at 27.) Plaintiff also reported left shoulder pain and reduced mobility, stating that he could not reach overhead without pain, but he could reach out in front with "little" pain. (R. at 27.) He reported difficulty holding things in his left hand and estimated that he could lift five pounds using his left arm and ten pounds using his right arm. (R. at 27.) At

14

the first step, the ALJ found that Plaintiff's medically determinable impairments could lead to the alleged symptoms.  (R. at 28.)

At the second step, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision."  (R. at 28.)  The ALJ then discussed inconsistencies between the record evidence and Plaintiff's subjective complaints and explained why and how he arrived at the RFC determination based on the record (R. at 28-30), thus building "an accurate and logical bridge from the evidence to his [RFC] conclusion."  *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).  In doing so, the ALJ did not completely dismiss Plaintiff's complaints or symptoms but rather incorporated them into the RFC to the extent he found them supported by the record.  (*See* R. at 28-30.)

The ALJ found Plaintiff capable of light work because he reported being able to carry a forty pack of water bottles at waist level in June 2021 and medical examinations thereafter showed normal strength in his upper extremities aside from mildly decreased abduction strength of 4/5 in the left shoulder.  (R. at 29 (citing Ex. 1F/9-13 [R. at 306-10]; Ex. 4F/79 [R. at 548]; Ex. 7F [R. at 622-30]).)  He further found that Plaintiff's back pain limited him to light work with four hours of sitting and standing and additional postural limitations.  (R. at 30.)  In declining to adopt further restrictions, the ALJ noted the lack of treatment for back pain during the period at issue, a one-time complaint of foot numbness followed by normal findings on testing, short-term leg swelling that resolved, and isolated reports of shortness of breath.  (R. at 30.)  The RFC limited Plaintiff to frequent handling, fingering, and feeling, and in declining to adopt additional gripping limitations, the ALJ noted that the record did not contain complaints about dropping items and examination

15

findings showed normal grip strength with an ability to make a fist and touch fingers to thumb. (R. at 30.) Finally, the ALJ limited Plaintiff to no overhead reaching and only occasional reaching in front/laterally and pushing/pulling with his left upper extremity given his left shoulder complaints. (R. at 27, 30.)

Thus, the ALJ reasonably accounted for Plaintiff's limitations in the RFC determination and discussed the substantial evidence supporting his findings. While Plaintiff points to evidence he views differently, this argument amounts to no more than an invitation for this Court to reweigh evidence that has already been considered by the ALJ. It is well-established that this Court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. Because substantial evidence supports the RFC determination, the Court finds no error.[5]

### B. The ALJ Applied Correct Legal Standards in Evaluating the Medical Opinion Evidence and Substantial Evidence Supports the ALJ's Findings

Plaintiff also argues that the ALJ failed to properly consider medical opinion evidence from Plaintiff's treating providers and the consultative examiner. (*See* ECF No. 14, at 1, 16-20.) As discussed below, the Court finds that the ALJ applied correct legal standards and adequately explained why he found those opinions unpersuasive given their lack of support and inconsistency with the record evidence. Because substantial evidence supports the ALJ's conclusions, the Court finds no error.

---

[5] Because the Court finds no error in the RFC determination, it likewise finds no error in the hypotheticals presented to the vocational expert at steps four and five. *See Mascio v. Colvin*, 780 F.3d 632, 638-39 (4th Cir. 2015) ("[T]he ALJ may find that [certain limitations do] not affect [claimant]'s ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert.").

*1. Applicable Regulations for Evaluating Medical Opinion Evidence*

Under applicable regulations,[6] the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources without deferring or giving any specific evidentiary weight to any medical source. 20 C.F.R. § 404.1520c(a). A medical opinion is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in [a variety of] abilities." *Id.* § 404.1513(a)(2). The ALJ must articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion[,]" including "familiarity with the other evidence or an understanding of [the SSA] disability program's policies and evidentiary requirements." *Id.* § 404.1520c.

Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered. *Id.* § 404.1520c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

---

[6] Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework. 20 C.F.R. § 404.1520c; (*see also* ECF No. 14, at 17; ECF No. 16, at 20.)

17

*Id.* § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  *Id.* § 404.1520c(b)(2).

>    2.  *Substantial Evidence Supports the ALJ's Evaluation of Dr. Domingus's Opinion*

Dr. Domingus has been Plaintiff's primary care provider since early 2020 and has treated Plaintiff for his arthritis, diabetes, and lumbar spine.  (ECF No. 14 at 3; *see also* R. at 28-29.)  Dr. Domingus, however, recommended temporary work restrictions for Plaintiff and never recommended specific long-term limitations.  (*See* R. at 32.)  For example, in May 2021, Dr. Domingus wrote: "He is going to inquire with his employer as to whether he would be allowed to return with the restrictions[.] I think starting with a 10 pound weight limit would be reasonable and then increase from there."  (R. at 488; *see also* R. at 32 (citing Ex. 4F/19 [R. at 488]).)  In July 2021, Dr. Domingus noted that he "agree[d] w/ 1 mos extension of work restrictions <8lbs lifting w/ Left UE.  Continue w/ PT and f/u in 1mos."  (R. at 486; *see also* R. at 32 (citing Ex. 4F/17 [R. at 486]).)  The ALJ did not find these opinions persuasive given their temporary duration.  (R. at 32.)

Plaintiff does not challenge the ALJ's evaluation of those short-term limitations.  Instead, he contends that the ALJ improperly disregarded Dr. Domingus's opinions contained in medical source statements.  (ECF No. 14, at 16-18 (citing R. at 462-69).)  But as Plaintiff, himself, acknowledges, "Dr. Domingus did not fully complete" those medical source statements.  (ECF No. 14, at 16.)  Indeed, he failed to identify any specific limitations or otherwise opine on how Plaintiff's impairments and symptoms translate into work limitations.  (*See* R. at 462-69.)  While Plaintiff faults the ALJ for not discussing these statements, such incomplete medical source statements do not constitute medical opinions because they fail to include any opinion about Plaintiff's ability to perform the mental or physical demands of work activities.  *See* 20 C.F.R.

18

§ 404.1513(a)(2). Accordingly, the ALJ did not need to articulate why such non-opinions are unpersuasive. *See* 20 C.F.R. § 404.1520c. The ALJ did not err in finding Dr. Domingus's temporary restrictions unpersuasive and declining to consider incomplete medical source statements.

### 3. Substantial Evidence Supports the ALJ's Evaluation of Ms. Love's Opinion

Ms. Love completed a consultative examination of Plaintiff on October 15, 2022. (R. at 622-28; *see also* R. at 29, 31.) Ms. Love opined that Plaintiff could:

> frequently lift and carry up to 10 pounds on the right, occasionally lift and carry 5 pounds on the left and 20 pounds on the right, sit about 4 hours total in a workday, stand and walk 2 hours total in a workday, never reach and occasionally grasp with the left upper extremity, and never bend, stoop, kneel, or squat.

(R. at 31, 627-28.)

The ALJ found Ms. Love's opinion unpersuasive because the limitations she recommended were not supported by her own consultative examination findings and were inconsistent with other medical records. (R. at 31.) Specifically, the ALJ emphasized that the medical records indicate that although Plaintiff had only mildly limited upper extremity strength at 4/5 left abduction and left shoulder range of motion, he otherwise had normal left upper extremity strength and no deficits in the right upper extremity. (R. at 31, 625-27.) In addition, Plaintiff could make a fist and touch fingers to thumb without difficulty and had full grip strength. (R. at 31, 626-27.) The ALJ found that these clinical findings did not support limiting Plaintiff to lifting only five pounds on the left or limiting him to occasional grasping on the left. (R. at 31.) The ALJ also pointed out that Ms. Love's consultative examination of Plaintiff showed "normal lower extremity strength, reflexes, sensation, and gait." (R. at 31, 625-28.) The ALJ concluded that such findings did not support limiting Plaintiff to two hours of standing and walking in a workday. (*See* R. at 31.) Finally, the ALJ noted that Plaintiff's consultative examination showed "no deformity, tenderness, or swelling

19

of the shoulders, elbows, hands/wrists, knees, or feet/ankles" and thus did not support Ms. Love's

opinion that Plaintiff should never perform postural activities.  (R. at 31, 628.)  In assessing Ms.

Love's opinion, the ALJ acknowledged Plaintiff's left upper extremity strength deficit, range of

motion limitations in the left shoulder and lumbar spine, and reports of tenderness and pain but

found Plaintiff capable of light work with no more than four hours of sitting and standing, some

postural limitations, and some manipulative limitations on his left side.  (R. at 31.)

Plaintiff identifies evidence in the medical records that he contends supports a finding that

Ms. Love's opinion carries persuasive weight.  (ECF No. 14, at 19.)  Again, Plaintiff essentially

requests the Court to reweigh the evidence already considered by the ALJ, which the Court cannot

do.  *See Hancock*, 667 F.3d at 472.  Substantial evidence supports the ALJ's conclusion that the

consultative examination findings and the record as a whole did not support the overly restrictive

limitations opined by Ms. Love.  The Court declines to reweigh the evidence and finds no error in

the ALJ's assessment of Ms. Love's opinion.

### 4.   *Substantial Evidence Supports the ALJ's Evaluation of Dr. Ford's Opinion*

Dr. Ford completed a cirrhosis and cardiac questionnaire following Plaintiff's three-day

hospital stay for acute congestive heart failure due to newly diagnosed cirrhosis and anemia.  (*See*

R. at 31-32, 665-73.)  Dr. Ford opined in the cirrhosis questionnaire that Plaintiff could sit at least

six hours total in a workday, stand and walk about two hours total, lift ten pounds frequently and

fifty pounds occasionally, and should elevate his legs at least two hours during a workday or after

sitting for more than two hours.  (R. at 31, 666-67.)  In the cardiac questionnaire, Dr. Ford assessed

the same sitting, standing, lifting, and carrying limitations but also directed that Plaintiff should

"elevate legs at hip height 80 to 90 percent of a workday; occasionally crouch/squat and climb

stairs, and never climb ladders; avoid all cigarette smoke; avoid concentrated exposure to extreme

heat, high humidity, fumes, odors, gases, and chemicals; [and] be off-task 10 percent of a workday . . . ." (R. at 31, 670-72.) In both questionnaires, Dr. Ford stated that, if Plaintiff followed the prescribed medication and exercise regimen and diet restrictions, his limitations would be minimal. (R. at 31-32, 667, 672.)

After summarizing Dr. Ford's opinions, the ALJ found them "not persuasive." (R. at 32.) The ALJ emphasized Dr. Ford's limited treatment and interaction with Plaintiff during a three-day hospital stay, noting that Dr. Ford was not listed as a provider in the medical records. (R. at 32.) The ALJ also found no support for any limitation requiring elevation of Plaintiff's legs considering that any leg swelling was reported in May 2023 and had resolved a month later. (*See* R. at 32, 685-86, 692-93.) In rejecting Dr. Ford's standing/walking limitation, the ALJ noted that Dr. Ford did not treat Plaintiff for any "musculoskeletal disorder" and that the record did not support standing/walking limitations associated with Plaintiff's cirrhosis and acute congestive heart failure, which had improved at discharge. (R. at 32.) The ALJ also considered Dr. Ford's own statement that any limitations would be "minimal" if Plaintiff followed the medical regimen and recommended lifestyle changes, suggesting that Dr. Ford's limitations were only temporary in nature. (R. at 31-32.) In doing so, the ALJ properly considered Dr. Ford's medical opinions and articulated why he found them unsupported, inconsistent with the record, and therefore unpersuasive. (R. at 31-32.)

## V.    CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF Nos. 13, 15), GRANT the Commissioner's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 16), and

AFFIRM the final decision of the Commissioner. An appropriate Order will accompany this Memorandum Opinion.

                                              _____/s/_____
                                              Summer L. Speight
                                              United States Magistrate Judge

Richmond, Virginia
Date: March 24, 2026

22